UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **BUDUDE ALLISON ZAWU ROBERTS,** | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | |
| | § | |
| **MARY DE ANDA-YBARRA,** Field Office | § | |
| Director of Enforcement and Removal | § | |
| Operations, El Paso Field Office, | § | |
| Immigration and Customs Enforcement; | § | |
| Warden**,** ERO El Paso Camp East Montana | § | |
| Detention Facility; | § | **EP-26-CV-00377-DCG** |
| **TODD M. LYONS,** *in his official capacity* | § | |
| *as* Acting Director, Immigration and | § | |
| Customs Enforcement; | § | |
| **MARKWAYNE MULLIN,** *in his official* | § | |
| *capacity as* Secretary, U.S. Department of | § | |
| Homeland Security; and | § | |
| **TODD BLANCHE,** *in his official capacity* | § | |
| *as* Acting Attorney General of the United | § | |
| States, | § | |
| | § | |
| *Respondents*. | § | |

## ORDER TEMPORARILY RESTRAINING RESPONDENTS FROM REMOVING PETITIONER AND SETTING HEARING

Petitioner Budude Allison Zawu Roberts moved for a temporary restraining order

("TRO")[1] barring "Respondents from removing Petitioner from the United States."[2] According

to Petitioner, Respondents didn't properly inform her of their plans to remove her to Sierra

---

[1] *See generally* Mot. TRO, ECF No. 11; *see also* Mem. ISO Mot. TRO, ECF No. 11-2.

[2] *See* Mot. TRO at 3.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

Leone.[3] That's a problem, Petitioner argues, because the Government can't lawfully remove her without first allowing her to apply for protection under the Convention Against Torture ("CAT").[4] Respondents, by contrast, argue that they don't need to allow Petitioner to apply for CAT protection because "Sierra Leone has issued Department of State approved assurances" that "any aliens removed there will not be persecuted or tortured."[5] Respondents further argue that the decision to accept those assurances is within the Government's discretion.[6]

Although the Court might ordinarily hold a hearing before ruling on an issue like this, swifter action is necessary here. Petitioner expects Respondents to remove her on May 15, 2026.[7] In other words, today. The Court has therefore reviewed the parties' filings and legal authorities on an expedited basis. For the reasons explained below, the Court finds it appropriate temporarily restrain Respondents from removing Petitioner from the United States while the Court considers whether further injunctive relief is appropriate.

---

[3] *See* Mot. TRO at 2–3.

[4] *See* Mem. ISO Mot. TRO at 9–12.

Petitioner also argues that Respondents must provide her an opportunity to apply for withholding of removal under 8 U.S.C. § 1231(b)(3). *See, e.g.*, Mem. ISO Mot. TRO at 2. Respondents counter that the withholding of removal process doesn't create any procedural or substantive rights for Petitioner to invoke. *See* Resp'ts' Resp. TRO Mot., ECF No. 13, at 7–8 (citing 8 U.S.C. § 1231(h)). The Court need not decide that issue because the Government's apparent failure to allow Petitioner to apply for CAT protection merits relief on its own. *See generally infra*.

[5] Resp'ts' Resp. TRO at 9.

[6] *Id.* at 10–11.

[7] *See* Pet'r's May 14, 2026 Status Update, ECF No. 15.

## I.    Discussion

### A.    Jurisdiction

The Court must first consider whether it has subject matter jurisdiction to grant the relief

Petitioner requests. 8 U.S.C. § 1252(g) provides (in relevant part) that:

> no court shall have jurisdiction to hear any cause or claim by or on
> behalf of any alien arising from the decision or action by
> the Attorney General to commence proceedings, adjudicate cases,
> or execute removal orders against any alien under this chapter.

That's noteworthy here because the relief that Petitioner seeks—an order temporarily prohibiting

Respondents from removing her[8]—arguably "arises from" a decision or action to execute

Petitioner's removal order.

The Supreme Court, however, has adopted a "narrow reading" of 8 U.S.C. § 1252(g).[9]

As the Supreme Court explained in *Reno v. American-Arab Anti-Discrimination Committee*, that

provision "was directed against a particular evil: attempts to impose judicial constraints upon

*prosecutorial discretion*."[10] And, following *Reno*, courts seem to agree that 8 U.S.C. § 1252(g)

---

[8] *See generally* Mot. TRO.

[9] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999).

[10] *Id.* at 485 n.9 (emphasis added); *see also id.* at 487 (characterizing 8 U.S.C. § 1252(g) as a "discretion-protecting provision").

does not preclude jurisdiction over purely legal questions.[11] That includes whether the

Government is authorized to remove an alien under a given set of circumstances.[12]

Here, Petitioner argues that the Government can't lawfully remove aliens without first

giving them an opportunity to apply for protection under CAT.[13]  The Court concludes (as other

courts have) that whether the Government may lawfully remove an alien is a purely legal issue,

meaning that 8 U.S.C. § 1252(g) does not strip the Court of jurisdiction to decide it.[14] Seeing no

---

[11] *See, e.g.*, *Bowrin v. I.N.S.*, 194 F.3d 483, 485 (4th Cir. 1999) (determining that 8 U.S.C. § 1252(g) "do[es] not preclude federal court review of habeas corpus petitions raising questions of pure law"); *Jama v. I.N.S.*, 329 F.3d 630, 633 (8th Cir. 2003), *aff'd*, 543 U.S. 335 (2005) ("[W]e have no reason to assume that Congress intended to preclude the district court's habeas review of a pure question of law . . . ."); *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (We have jurisdiction to decide a "purely legal question" that "does not challenge the Attorney General's discretionary authority." (citing cases)); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) ("While [8 U.S.C. § 1252(g)] bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions.").

[12] *See, e.g.*, *Jama*, 329 F.3d at 632 (concluding that 8 U.S.C. § 1252(g) did not preclude review of "the Attorney General's construction of a statute" or whether a statute authorized removal under the circumstances); *Siahaan v. Madrigal*, Civil No. PWG-20-02618, 2020 WL 5893638, at *5 (D. Md. Oct. 5, 2020) (determining that 8 U.S.C. § 1252(g) does not preclude courts from reviewing "the purely legal questions of whether . . . removal under the[ ] circumstances violates [applicable] statutory and constitutional provisions").

[13] *See* Mem. ISO Mot. TRO at 2–3, 6.

[14] *See, e.g.*, *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 515 (D. Md. 2025).

In *Abrego Garcia v. Noem*, the Government removed an alien (Abrego Garcia) without a final removal order. *Id.* at 519. After determining that it retained jurisdiction, the district court ordered his return. Thereafter, the Government applied to the Supreme Court to stay the district court's order. *See* Application for Stay, *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) (No. 24A), 2025 WL 1038907. Although the parties briefed the jurisdictional issue, *see, e.g.*, *id.* at 17–20, the Supreme Court did not explicitly pass on what effect (if any) 8 U.S.C. § 1252(g) had on Petitioner's arguments. *See Noem v. Abrego Garcia*, 145 S. Ct. at 1018. The Supreme Court did, however, uphold the district court's order to "facilitate" Abrego Garcia's return. *Id.*

This Court recognizes that it cannot infer, from the mere fact that the Supreme Court reached the merits of that issue, that the Supreme Court implicitly determined in *Abrego Garcia* that the district court had jurisdiction to enter that order. *See, e.g.*, *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed."). Still, the fact that the Supreme Court did not vacate the district court's order for want of jurisdiction—despite the issue being fully briefed and

other authorities that preclude the Court's review, the Court concludes that it has jurisdiction to consider the Motion.

### B.        Temporary Restraining Order

Having determined that it retains jurisdiction, the Court now turns to Petitioner's request for a TRO. Under Federal Rule of Civil Procedure 65, a TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief, which requires that the party seeking such relief establish the same four elements for obtaining a preliminary injunction."[15] "The purpose of a TRO is to preserve the status quo and prevent irreparable harm until the court makes a final decision on injunctive relief."[16]

To prevail, the movant must prove that:

(1)      they are likely to succeed on the merits;

(2)      they are likely to suffer irreparable harm in the absence of preliminary relief;

(3)      the balance of equities tips in their favor, and

(4)      that a TRO is in the public interest.[17]

---

directly before the Court—gives this Court some additional reassurance that it has jurisdiction to order the Government to temporarily restrain Petitioner's removal.

[15] *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021) (citation modified); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (establishing elements for obtaining a preliminary injunction).

[16] *Mahdejian v. Bradford*, No. 9:25-CV-00191, 2025 WL 2269796, at *2 (E.D. Tex. July 3, 2025) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974)).

[17] *See Winter*, 555 U.S. at 20.

Temporary restraining orders are "extraordinary relief and rarely issued."[18] In those rare cases, "every restraining order must state the reasons why it issued; state its terms specifically; and describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."[19]

### 1. Likelihood of Success

The Court begins with the first TRO prong, which requires Petitioner to demonstrate a likelihood of success on the merits. Preliminarily, there is at least some question as to what "the merits" are for the purposes of this Motion. In other (non-habeas) contexts, courts have determined that "[t]he relevant inquiry of whether [a litigant has] shown a likelihood of success on the merits is whether they are likely to prevail on the causes of action they assert *in their complaint*."[20] Because this is a habeas action, the ultimate relief that Petitioner seeks is her release from custody.[21] Thus, to prevail on the Motion under the typical TRO framework, Petitioner would have to show a likelihood that the Court will grant her release.

Habeas cases, however, appear to present an exception to the typical TRO framework. Under similar circumstances—in other words, where the lawfulness of an alien's removal is at issue—courts have determined that aliens may satisfy the "likelihood of success" prong by

---

[18] *E.g.*, *Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999).

[19] FED. R. CIV. P. 65(d)(1).

[20] *See Bermudez v. SN Servicing Corp.*, No. 2:22-CV-01246-KJM-DB, 2022 WL 4280168, at *2 (E.D. Cal. Sept. 15, 2022) (emphasis added); *see also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (determining that "new assertions of mistreatment that are entirely different from the claim raised and the relief requested" in a complaint "cannot provide the basis for a preliminary injunction" (citing *Stewart v. I.N.S.,* 762 F.2d 193, 198–99 (2d Cir. 1985)).

[21] *See generally* Pet., ECF No. 1.

showing that removal would be or was unlawful.[22] In *Abrego Garcia v. Noem*, for example, the district court's "likelihood of success" analysis focused on whether the Government had wrongfully removed an alien (rather than whether the Government had wrongfully detained that alien).[23] After determining that the alien was likely to succeed in arguing that the Government wrongfully removed him, the district court ordered the Government to facilitate his return.[24] The Supreme Court upheld that order, concluding that the district court had "properly require[d] the Government to 'facilitate' [the alien's] release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador."[25]

In light of *Abrego Garcia*—and without yet weighing in on the merits of the Petition—this Court concludes that Petitioner's "likelihood of success" for the purposes of the Motion hinges on whether she is likely to succeed in arguing that her removal would be unlawful under the circumstances. The Court finds that she is likely to succeed on such an argument.

Petitioner argues that her impending removal would be unlawful because the Government didn't allow her to seek CAT protection from Sierra Leone.[26] Respondents don't seem to contest the factual premise of Petitioner's argument, but instead urge the Court that they don't need to individually evaluate Petitioner's situation because the Government has already received adequate assurances from Sierra Leone that aliens won't be persecuted or tortured[27]—which are

---

[22] *See, e.g.*, *Abrego Garcia v. Noem*, 777 F. Supp. 3d at 516–17.

[23] *See id.*

[24] *See id.* at 519.

[25] *See Noem v. Abrego Garcia*, 145 S. Ct. at 1018.

[26] *See* Mem. ISO Mot. TRO at 2–3, 6, 10–11.

[27] *Id.* at 9.

primary considerations under CAT.[28]  They further argue that, under *Munaf v. Geren*, the United States Government's decision to accept a foreign government's assurances is a policy judgment that isn't subject to judicial review.[29]

Respondents' arguments are unavailing.  First, the Fifth Circuit has instructed that aliens are "entitled to a reasonably fair opportunity to apply for . . . [CAT] protection."[30] Categorically determining that Sierra Leone is an acceptable country for alien's removal isn't equivalent to providing Petitioner a "reasonably fair opportunity to apply for . . . [CAT] protection."[31] Second, Respondents' reliance on *Munaf* is misplaced because—regardless of whether the Government has accepted Sierra Leone's general assurances that it won't persecute or torture aliens—CAT

---

[28] *See generally* 8 C.F.R. § 208.16 (describing considerations for withholding of removal under 8 U.S.C. § 1231(b)(3) and protection under CAT).

[29] Resp'ts' Resp. TRO Mot. at 10–11 (citing *Munaf v. Geren*, 553 U.S. 674, 702 (2008)).

[30] *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002) (citing *Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382 (10th Cir. 1981)); *see also Nasrallah v. Barr*, 590 U.S. 573, 575 (2020) ("During removal proceedings, **a noncitizen may raise claims** under the international Convention Against Torture, known as CAT." (emphasis added)).

[31] *See, e.g.*, *Mahdejian*, 2025 WL 2269796, at *4 (determining that an alien met their burden on the first *Winter* factor where the alien argued "that blanket assurances are no substitute for the individualized inquiries required by the INA, the CAT, and the language of their implementing regulations"); *accord Azzo v. Noem*, No. 3:25-CV-03122-RBM-BJW, 2025 WL 3535208, at *8 (S.D. Cal. Dec. 10, 2025); *Esmail v. Noem*, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030589, at *7 (C.D. Cal. Sept. 26, 2025).

demands that the Government assess those issues Petitioner on an individualized basis.[32] As far as the record reflects, the Government hasn't done so.[33]

For these reasons, the Court finds that Petitioner is likely to succeed in arguing that the Government may not lawfully remove her to Sierra Leone without first letting her apply for CAT protection. The first *Winter* factor therefore tips in Petitioner's favor.

### 2.    Substantial Threat of Irreparable Harm

The Court next considers whether Petitioner has shown a substantial threat of irreparable harm. "An injury is 'irreparable' only if it cannot be undone through monetary remedies."[34]

As explained above, Petitioner seeks CAT protection from Sierra Leone.[35] If her concerns that she will be "persecuted or tortured" in Sierra Leone are founded,[36] then Petitioner will be at physical risk if the Government carries out the removal. For that reason, the threat of

---

[32] *See Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1003 (S.D. Tex. 2025) ("CAT protection is a **mandatory protection** against deportation to a country where the IJ finds that **the individual** is likely to be tortured." (citation modified)); *see also M.A.P.S. v. Garite*, 786 F. Supp. 3d 1026, 1060 (W.D. Tex. 2025) ("It would be impossible for Respondents to know whether an individual may be more likely than not to face torture without the opportunity to address an immigration judge and present evidence.").

*Cf. Santos-Alvarado v. Barr*, 967 F.3d 428, 437 (5th Cir. 2020) (evaluating considerations specific to the alien at issue when assessing whether CAT protection was appropriate).

[33] *See* Resp'ts' Resp. TRO Mot. at 9–10.

[34] *OCA Greater Houston v. Texas*, No. 1:15-CV-679-RP, 2016 WL 4597636, at *4 (W.D. Tex. Sept. 2, 2016) (citing *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)).

[35] *See* Mem. ISO Mot. TRO at 2–3 (noting that Petitioner hasn't been given the opportunity to apply for CAT protection from Sierra Leone, "where she fears persecution or torture").

[36] *See* Reply ISO Mot. TRO, ECF No. 14, at 2.

irreparable harm in this case "is clear and simple: persecution, torture, and death."[37] The Court

finds that monetary remedies would be inadequate to "undo" these types of harm.[38]

The second *Winter* factor therefore also tips in Petitioner's favor.

### 3. Balance of Hardships and Public Interest

Finally, the third and fourth factors "merge when the Government is the opposing

party,"[39] as is true here. Concerning the balance of equities, "courts 'must balance the competing

claims of injury and must consider the effect on each party of the granting or withholding of the

requested relief.'"[40] As to the public interest, the Court "should pay particular regard for the

public consequences in employing the extraordinary remedy of [a TRO]."[41] "Of course there is a

public interest in preventing aliens from being wrongfully removed, particularly to countries

where they are likely to face substantial harm."[42] Conversely, "[t]here is always a public interest

in prompt execution of removal orders." [43]

---

[37] *Mahdejian*, 2025 WL 2269796, at *4 (citing cases); *see also Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) ("Deportation to a country where one's life would be threatened obviously would result in irreparable injury.").

[38] *See, e.g.*, *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 759 F. Supp. 1339, 1352 (W.D. Wis. 1991) (concluding that "assaults, batteries[,] and harassment" "cannot be remedied by monetary damages").

[39] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[40] *Winter*, 555 U.S. at 24.

[41] *Id.*

[42] *Nken*, 556 U.S. at 436.

[43] *Id.*

Here, Petitioner is in a particularly vulnerable position of being subject to removal to a country where (1) she alleges that she is likely to face substantial harm;[44] but (2) hasn't been afforded the opportunity to demonstrate as much.[45] Moreover, while the Court acknowledges the "public interest in prompt execution of removal orders," that doesn't mean the Government can neglect its obligations under CAT when removing aliens. Indeed, the public interest in allowing Petitioner a "reasonably fair opportunity to apply for . . . [CAT] protection"[46] outweighs what little legitimate interest the Government has (if any) in side-stepping its humanitarian obligations.[47]

The equities and public interest factors therefore tip in Petitioner's favor as well.

\*\*\*\*\*

Having carefully considered each *Winter* factor, the Court finds that Petitioner has made a sufficient showing to justify temporarily preserving the status quo while the Court considers whether a preliminary injunction is appropriate.[48]  The Court will therefore order Respondents to temporarily refrain from removing Petitioner (as detailed below).[49]

---

[44] *See supra* note 36 and accompanying text.

[45] *See generally* Mot. TRO.

[46] *See supra* note 30 and accompanying text.

[47] *See State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (stating that there is "generally no public interest in the perpetuation of unlawful agency action").

[48] *See Granny Goose*, 415 U.S. at 439.

[49] *See infra* Section II.

In the meantime, the Court will order the parties to attend an in-person hearing to further flesh out the factual and legal issues associated with Petitioner's Motion.[50] Thereafter, the Court will be better-equipped to "make[] a final decision on injunctive relief."[51]

## II.    Conclusion

For the reasons stated above, the Court **GRANTS** Petitioner's "Emergency Motion for Temporary Restraining Order" (ECF No. 11) **IN PART** to the extent it seeks a temporary restraining order prohibiting Respondents from removing Petitioner from the United States.

The Court thereby **TEMPORARILY RESTRAINS** Respondents from removing Petitioner from the United States until (1) **Friday, May 22, 2026 at 11:59 P.M. Mountain Time**; *or* (2) the Court orders otherwise.

The Court **DENIES** the "Emergency Motion for Temporary Restraining Order" (ECF No. 11) **IN ALL OTHER RESPECTS**.

The Court further **ORDERS** attorneys for Petitioner and Respondents to **APPEAR FOR AN IN-PERSON HEARING** on **Wednesday, May 20, 2026 at 10:00 A.M. Mountain Time** in Courtroom Number 322, on the third floor of the United States Courthouse, 525 Magoffin Avenue, El Paso, Texas.

Absent extraordinary circumstances, the Court will **NOT** consider requests to hold the hearing via telephone or videoconference.

Besides any other legal issues that the parties deem appropriate to address, the parties shall come to the Hearing prepared to address the Government's obligations when an alien

---

[50] *See infra* Section II.

[51] *Mahdejian*, 2025 WL 2269796, at *5.

claims fear of removal to a third country—as set forth under CAT, 8 U.S.C. § 1231, relevant regulations, and any other sources of law.

The Court **ORDERS** Respondents to produce Petitioner Budude Allison Zawu Roberts at the hearing. If an interpreter is required, Petitioner's counsel **MUST INFORM** the Court as soon as possible.

The Court **ORDERS** Respondents to transmit this Order to all relevant officers, agents, and employees under their control and with responsibility in this matter.

Finally, the Clerk **SHALL** serve copies of this Order on all named Respondents.

**So ORDERED and SIGNED this 15th day of May 2026.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**