**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **BUDUDE ALLISON ZAWU ROBERTS,** | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | |
| | § | |
| **MARY DE ANDA-YBARRA,** Field Office | § | |
| Director of Enforcement and Removal | § | |
| Operations, El Paso Field Office, | § | |
| Immigration and Customs Enforcement; | § | |
| Warden, ERO El Paso Camp East Montana | § | |
| Detention Facility; | § | **EP-26-CV-00377-DCG** |
| **TODD M. LYONS,** *in his official capacity* | § | |
| *as* Acting Director, Immigration and | § | |
| Customs Enforcement; | § | |
| **MARKWAYNE MULLIN,** *in his official* | § | |
| *capacity as* Secretary, U.S. Department of | § | |
| Homeland Security; and | § | |
| **TODD BLANCHE,** *in his official capacity* | § | |
| *as* Acting Attorney General of the United | § | |
| States, | § | |
| | § | |
| *Respondents*. | § | |

**ORDER PRELIMINARILY ENJOINING RESPONDENTS FROM REMOVING**
**PETITIONER PENDING WITHHOLDING OF REMOVAL DETERMINATION**

Petitioner Budude Allison Zawu Roberts moves to enjoin "Respondents from removing

Petitioner from the United States" until they follow the necessary steps to ensure that Petitioner

will be safe in her designated country of removal.[1]  For the reasons explained below, the Court

grants Petitioner her requested injunction.

---

[1] *See generally* Mot. TRO, ECF No. 11; Mem. ISO Mot. TRO, ECF No. 11-2.  Though the
Motion states that Petitioner seeks a temporary restraining order ("TRO"), *see* Mot. TRO at 3, the Court
construes her request as seeking a preliminary injunction.  As explained below, TROs preserve the status
quo until a court can conduct a preliminary-injunction hearing, whereas preliminary injunctions preserve
the status quo until a court can resolve a case on its merits.  *See infra* Section III.B.  The scope of relief
that Petitioner requests in her Motion indicates that she seeks the latter rather than merely the former.  So

## I.   Introduction

Withholding of removal is a protection for aliens who have been ordered removed from

the United States, but who have a well-founded fear of removal to a particular country.  United

States immigration laws provide aliens with two avenues to seek such protection:

> (1) under 8 U.S.C. § 1231(b)(3)(A), which prohibits the Government from "remov[ing] an alien to a country if the [the Government] decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion"; and

> (2) under the Convention Against Torture ("CAT"), which prohibits the Government from "involuntar[ily] return[ing] any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture."[2]

The processes by which aliens can seek withholding of removal are set forth by

regulation.[3]  To obtain withholding of removal, aliens must establish that it is more likely than

not that their removal to a given country would subject them to either persecution (under

§ 1231(b)(3)) or torture (under CAT).[4]  These are, by nature, "individualized determinations."[5]

---

too does the fact that both parties have had the opportunity to file briefs and advocate for their positions. *See, e.g.*, *Perez Hernandez v. Noem*, No. EDCV 26-1121 JGB (AJRX), 2026 WL 822527, at *2 (C.D. Cal. Mar. 19, 2026) ("Because both parties have had an opportunity to file briefs, the Court construes the Application for a TRO as a motion for preliminary injunction.").

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[2] *See* 8 U.S.C. § 1231 Note ("United States Policy With Respect to Involuntary Return of Persons in Danger of Subjection to Torture"); *see also id.* (commanding "the heads of the appropriate agencies [to] prescribe regulations to implement the obligations of the United States under Article 3 of [CAT]").

[3] *See, e.g.*, 8 C.F.R. § 208.16.

[4] *Id.* § 208.16(b), (c).

[5] *See Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) (characterizing whether to grant withholding of removal under 8 U.S.C. § 1231(b)(3) and CAT (among other things) as "individualized determinations").

In March 2025, however, the Department of Homeland Security ("DHS") issued guidance that purported to "streamline" the Government's process for removing aliens to third countries.[6] That guidance provides that an "alien may be removed [to a specified third country] without the need for further procedures"—that is, without allowing the alien to seek withholding of removal—where the Government has accepted assurances from that third country that aliens removed there "will not be persecuted or tortured."[7] As will become relevant below, one of the countries that has given the United States such assurances is Sierra Leone. The United States has therefore categorically determined that it may remove aliens to Sierra Leone without considering whether individual aliens are entitled to withholding of removal.[8]

That poses the question—Can the Government sidestep Congressional mandates and regulatorily-prescribed procedures via agency guidance? As explained below, it cannot.

## II.    Background

Petitioner is a Liberian citizen who is subject to a removal order from 2003.[9] An Immigration Judge granted her withholding of removal to Liberia under 8 U.S.C. § 1231(b)(3).[10] That withholding prevents the Government from removing her to Liberia.[11] However, the

---

[6] *See* Resp'ts Resp. Mot. TRO at 8–9; March 30, 2025 DHS Guidance, ECF No. 13-2.

[7] March 30, 2025 DHS Guidance at 1–2.

[8] *See* Resp'ts Resp. Mot. TRO at 9.

[9] Pet., ECF No. 1, at 8.

[10] Resp'ts' Resp., ECF No. 5, at 2.

[11] *See* Order of Immigration Judge, ECF No. 1-1.

withholding order does not by itself prevent the Government from removing her to any other country.[12]

Decades later, on January 16, 2026, the Government detained Petitioner to effectuate her removal.[13]  At that point, the Government hadn't designated a third country—that is, a country other than Liberia—to which to remove Petitioner.[14]  Petitioner therefore filed this habeas case, in which she argues that her removal isn't "significantly likely in the reasonably foreseeable future"[15]—which is a potential basis to secure release under the Supreme Court's decision in *Zadvydas v. Davis*.[16]

To intelligently rule on Petitioner's *Zadvydas* claim, the Court issued an order on April 24, 2026 requiring the Government to inform the Court of (1) when it anticipated removing Petitioner and (2) to what country.[17]  On April 29, 2026, the Government responded that it expected to remove Petitioner sometime in May.[18]  Notably, the Government identified Sierra Leone as the country that would accept Petitioner's removal.[19]

The Government's status update prompted a quick response from Petitioner.  On May 1, 2026, she filed a motion asking the Court to enjoin her impending removal on the basis that

---

[12] *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.6 (1987).

[13] *See* Pet. at 3.

[14] *Id.*

[15] *See generally id*.

[16] *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)

[17] *See* Order Status Update, ECF No. 9.

[18] *See* Resp'ts' Status Update, ECF No. 10; Martinez Dec., ECF No. 10-1, at 2.

[19] *See* Martinez Dec. at 1.

Government hadn't allowed her to apply for withholding of removal to Sierra Leone under 8 U.S.C. § 1231(b)(3) and CAT.[20]  Respondents responded on May 7, 2026, arguing that they didn't need to allow Petitioner to apply for withholding of removal because "Sierra Leone has issued Department of State approved assurances" that "any aliens removed there will not be persecuted or tortured."[21]  Respondents further argued that the decision to accept those assurances is within the Government's discretion and thus shielded from judicial review.[22]

On May 15, 2026, the Court issued an order temporarily restraining the Government from removing Petitioner until at least 11:59 p.m. Mountain Time on May 22, 2026.[23]  The dual purpose of that temporary restraining order ("TRO") was to (1) allow the Court to carefully assess the parties' arguments; and (2) schedule a hearing on whether the Court should convert the TRO to a preliminary injunction.[24]  The Court held that hearing on May 20, 2026 and is now prepared to rule.

---

[20] *See* Mem. ISO Mot. TRO at 2–3, 9–12.

[21] Resp'ts' Resp. Mot. TRO at 9.

[22] *Id.* at 10–11.

[23] *See* TRO, ECF No. 16.

[24] *See id.* at 11–12.

### III.    Discussion

#### A.    Jurisdiction

The Court must first consider whether it has subject matter jurisdiction to grant the relief Petitioner requests.[25]  Respondents identify six jurisdictional impediments that they argue strip the Court of jurisdiction.

#### 1.    8 U.S.C. § 1252(g)

The first such jurisdictional impediment is 8 U.S.C. § 1252(g),[26] which provides (in relevant part) that:

> no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

That's noteworthy here because the relief that Petitioner seeks—an order temporarily enjoining Respondents from removing her[27]—arguably "arises from" a decision or action to execute Petitioner's removal order.

The Supreme Court, however, has adopted a "narrow reading" of § 1252(g).[28]  As the Supreme Court explained in *Reno v. American-Arab Anti-Discrimination Committee*, that provision "was directed against a particular evil: attempts to impose judicial constraints upon

---

[25] *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first." (quoting *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021)).

[26] *See* Resp'ts' Resp. Mot. TRO at 3 (citing 8 U.S.C. § 1252(g)).

[27] *See generally* Mot. TRO.

[28] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999).

*prosecutorial discretion*."[29]  And, following *Reno*, courts seem to agree that § 1252(g) does not divest federal courts of jurisdiction to decide purely legal questions.[30]  That includes whether the Government is authorized to remove an alien under a given set of circumstances.[31]

Here, Petitioner argues that the Government can't lawfully remove aliens without first giving them an opportunity to apply for protection under § 1231(b)(3) and CAT.[32]  The Court concludes (as other courts have) that whether the Government may lawfully remove an alien is a purely legal issue, meaning that § 1252(g) does not strip the Court of jurisdiction to decide it.[33]

---

[29] *Id.* at 485 n.9 (emphasis added); *see also id.* at 487 (characterizing 8 U.S.C. § 1252(g) as a "discretion-protecting provision").

[30] *See, e.g.*, *Bowrin v. INS*, 194 F.3d 483, 485 (4th Cir. 1999) (determining that 8 U.S.C. § 1252(g) "do[es] not preclude federal court review of habeas corpus petitions raising questions of pure law"); *Jama v. INS.*, 329 F.3d 630, 633 (8th Cir. 2003), *aff'd*, 543 U.S. 335 (2005) ("[W]e have no reason to assume that Congress intended to preclude the district court's habeas review of a pure question of law . . . ."); *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (holding that federal courts have jurisdiction to decide a "purely legal question" that "does not challenge the Attorney General's discretionary authority" (citing cases)); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) ("While [8 U.S.C. § 1252(g)] bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions.").

[31] *See, e.g.*, *Jama*, 329 F.3d at 632 (concluding that 8 U.S.C. § 1252(g) did not preclude review of "the Attorney General's construction of a statute" or whether a statute authorized removal under the circumstances); *Siahaan v. Madrigal*, Civil No. PWG-20-02618, 2020 WL 5893638, at *5 (D. Md. Oct. 5, 2020) (determining that 8 U.S.C. § 1252(g) does not preclude courts from reviewing "the purely legal questions of whether . . . removal under the[ ] circumstances violates [applicable] statutory and constitutional provisions").

[32] *See* Mem. ISO Mot. TRO at 2–3, 6.

[33] *See, e.g.*, *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 515 (D. Md. 2025); *see also supra* note 31.

In *Abrego Garcia v. Noem*, the Government removed an alien (Abrego Garcia) without a final removal order.  777 F. Supp. 3d at 519.  After determining that it retained jurisdiction, the district court ordered his return.  Thereafter, the Government applied to the Supreme Court to stay the district court's order. *See* Application for Stay, *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) (No. 24A), 2025 WL 1038907. Although the parties briefed the jurisdictional issue, *see, e.g.*, *id.* at 17–20, the Supreme Court did not explicitly pass on what effect (if any) 8 U.S.C. § 1252(g) had on Petitioner's arguments. *See*

### 2.      8 U.S.C. § 1252(a)(2)

Respondents next cite 8 U.S.C. § 1252(a)(2),[34] which "limits the ability of courts to review decisions regarding the granting of relief from removal."[35]  Petitioner isn't challenging the Government's decision to grant or deny relief.  Rather, she's challenging the Government's refusal to consider that relief at all under its current guidance.[36]  The Court concludes that § 1252(a)(2) doesn't preclude the Court from reviewing that issue.[37]

_____

*Noem v. Abrego Garcia*, 145 S. Ct. at 1018. The Supreme Court did, however, uphold the district court's order to "facilitate" Abrego Garcia's return. *Id.*

This Court recognizes that it cannot infer, from the mere fact that the Supreme Court reached the merits of that issue, that the Supreme Court implicitly determined in *Abrego Garcia* that the district court had jurisdiction to enter that order.  *See, e.g.*, *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed.").  Still, the fact that the Supreme Court did not vacate the district court's order for want of jurisdiction—despite the issue being fully briefed and directly before the Court—gives this Court some additional reassurance that it has jurisdiction to order the Government to temporarily restrain Petitioner's removal.

[34] *See* Resp'ts' Resp. Mot. TRO at 4 (citing 8 U.S.C. § 1252(a)(2)).

[35] *Allaico Pacheco v. Noem*, No. 5:25-CV-01856-MA, 2026 WL 475293, at *2 (W.D. Tex. Feb. 11, 2026).

[36] *See supra* note 20 and accompanying text.

[37] *See, e.g.*, *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 72 (D.D.C. 2025) (determining that 8 U.S.C. § 1252(a)(2) doesn't strip courts of jurisdiction to consider the lawfulness of agency guidance that conflicted with regulations), *aff'd sub nom. Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, No. 25-5243, 2026 WL 1110616 (D.C. Cir. Apr. 24, 2026).

*Cf. United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (striking down the Government's determination that certain aliens were not entitled to seek suspension of deportation where the Government had "fail[ed] to exercise its own discretion").

### 3.    8 U.S.C. § 1252(a)(4)

Next, Respondents argue that 8 U.S.C. § 1252(a)(4) strips the Court of jurisdiction to consider Petitioner's CAT-related arguments.[38]  That section provides that:

> [n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under [CAT].

The Supreme Court has interpreted§ 1252(a)(4) to channel judicial review of "CAT Orders" to the courts of appeals.[39]  Here, though, there is no "CAT Order" because the Government declined to screen Petitioner for withholding of removal.[40]  Indeed, Petitioner hasn't even had the opportunity to raise a "cause or claim under [CAT]."[41]  The Court therefore concludes that § 1252(a)(4) doesn't strip the Court of jurisdiction.[42]

---

[38] Resp'ts Resp. Mot. TRO at 3–4.

[39] *See Nasrallah v. Barr*, 590 U.S. 573, 580–81, 585 (2020).

[40] *See* Resp'ts' Resp. TRO at 2 ("Petitioner will not have an opportunity to seek withholding of removal [under 8 U.S.C. § 1231(b)(3) or CAT] . . . .").

[41] *See id.*

[42] *See, e.g.*, *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *17 (D. Mass. Feb. 25, 2026) ("Section 1252(a)(4) does not, as Defendants seem to suggest, apply to any claim that simply *relates* to CAT." (citing *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 11 (1st Cir. 2007)).

### 4.      8 U.S.C. § 1252(a)(5)

Nor does 8 U.S.C. § 1252(a)(5) preclude the Court's review.[43]  That section provides (in relevant part) that:

> a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review ***of an order of removal*** entered or issued under any provision of this chapter . . . .[44]

Orders that deny withholding of removal under § 1231(b)(3) aren't "order[s] of removal."[45]  The same goes for orders that deny CAT protection.[46]  The Court therefore concludes that the Government's decision to deny Petitioner the opportunity to seek withholding of removal under those two authorities isn't an "order of removal" either.  Thus, § 1252(a)(5) doesn't strip the Court of jurisdiction.

### 5.      8 U.S.C. § 1252(b)(9)

The Court next considers the jurisdictional implications of 8 U.S.C. § 1252(b)(9),[47] which provides that:

> [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this

---

[43] *Contra* Resp'ts' Resp. Mot. TRO at 3.

[44] 8 U.S.C. § 1252(a)(5) (emphasis added).

[45] *Ruiz-Perez v. Garland*, 49 F.4th 972, 976 (5th Cir. 2022) (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 535–36 (2021)).

[46] *Id.* at 975–76 (citing *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020)); *see also Nasrallah*, 590 U.S. at 583 (explaining that while "a CAT order may be reviewed together with the final order of removal," it is not "the same as . . . a final order of removal").

[47] *See* Resp'ts Resp. TRO at 3 (citing 8 U.S.C. § 1252(b)(9)).

> section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, . . . or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

The Supreme Court has explained that § 1252(b)(9) doesn't strip courts of jurisdiction where an alien is not "asking for review of an order of removal," "challenging the decision to detain them in the first place or seek removal," or "challenging any part of the process by which their removability will be determined."[48]  Because Petitioner is doing none of those things,[49] § 1252(b)(9) doesn't strip the Court of jurisdiction here.[50]

### 6.    FARRA § 2242(d)

Finally, the Court has considered whether § 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"[51]) strips it of jurisdiction.[52]  That provision states (in relevant part) that "no court shall have jurisdiction to review the regulations adopted to implement [CAT]."

---

[48] *See Nielsen v. Preap*, 586 U.S. 392, 402 (2019); *see also Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022); *Texas v. United States*, 809 F.3d 134, 163 (5th Cir. 2015), *aff'd by an equally divided court*, *United States v. Texas*, 579 U.S. 547 (2016).

[49] *See generally* Mot. TRO.

[50] *See, e.g.*, *Sagastizado*, 802 F. Supp. 3d at 1005–06.

[51] *See* Pub. L. No. 105-277, Div. G, § 2242.

[52] *See* Resp'ts' Resp. TRO at 3–4 (citing FARRA § 2242(d)).

Congress codified FARRA § 2242 as a statutory note to 8 U.S.C. § 1231.  *See* 8 U.S.C. § 1231 (note) ("United States Policy With Respect to Involuntary Return of Persons in Danger of Subjection to Torture").

Petitioner hasn't challenged any CAT regulations.  In fact, she wants the Government to apply them as promulgated.  "Since no challenge is made in this case to the [CAT] regulations," § 2242(d)'s "jurisdiction-limiting provision" doesn't apply.[53]

### B.        Preliminary Injunction

Having determined that it retains jurisdiction, the Court will now evaluate whether Petitioner is entitled to relief.  The Court previously issued a TRO to maintain the status quo until it could hold a hearing on whether injunctive relief is appropriate here.[54]  Now that the Court has held that hearing and heard the parties' arguments, the Court must now consider whether to issue a preliminary injunction.[55]

Whereas TROs preserve the status quo until the court can conduct a preliminary-injunction hearing,[56] preliminary injunctions preserve the status quo until the court can resolve a case on its merits.[57]  Preliminary injunctions are "extraordinary" remedies that are "never

---

[53] *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *18 (D. Mass. Feb. 25, 2026) (citation modified).

*See also Khouzam v. Att'y Gen. of U.S.*, 549 F.3d 235, 258–59 & n.14 (3d Cir. 2008) ("Since we find no reason to question the validity of the regulations, section 2242 neither applies nor is itself drawn into constitutional scrutiny.").

[54] *See* TRO at 11–12.

[55] *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 443 (1974) ("Where a hearing on a preliminary injunction has been held after issuance of a temporary restraining order, and where the District Court decides to grant the preliminary injunction, the appropriate procedure is not simply to continue in effect the temporary restraining order, but rather to issue a preliminary injunction, accompanied by the necessary findings of fact and conclusions of law.").

[56] *See id.* at 438–39.

[57] *See Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) ("Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned."); *see also Starbucks Corp. v.*

awarded as of right."[58]  Like for a TRO,[59] obtaining a preliminary injunction requires movants to show that:

(1)  they are likely to succeed on the merits;

(2)  they are likely to suffer irreparable harm in the absence of preliminary relief;

(3)  the balance of equities tips in their favor, and

(4)  that a preliminary injunction is in the public interest.[60]

These are commonly known as the "*Winter* factors."[61]

The Court will consider each factor in turn.

### 1.    Likelihood of Success

The Court begins with the first *Winter* factor, which requires Petitioner to demonstrate a likelihood of success on the merits.  Preliminarily, there is at least some question as to what "the merits" are for the purposes of injunctive relief here.  In other (non-habeas) contexts, courts have determined that "[t]he relevant inquiry of whether [a litigant has] shown a likelihood of success on the merits is whether they are likely to prevail on the causes of action they assert ***in their***

---

*McKinney*, 602 U.S. 339, 346 (2024) ("[A preliminary injunction's] purpose is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

[58] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[59] *See, e.g.*, *Sanders v. Fitch*, No. 1:23CV105-MPM-RP, 2023 WL 7782922, at *1 (N.D. Miss. Nov. 15, 2023) (observing that "the same criteria govern the issuance of preliminary injunctions and temporary restraining orders").

[60] *See Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006)); *see also Winter*, 555 U.S. at 20.

[61] *See, e.g.*, *Price v. Texas Tech Univ. Health & Scis. Ctr. El Paso*, 784 F. Supp. 3d 944, 951 (W.D. Tex. 2025).

*complaint*."[62]  Because this is a habeas action, the ultimate relief that Petitioner seeks is her

release from custody.[63]  Thus, to prevail on the Motion under the typical framework, Petitioner

would have to show a likelihood that the Court will grant her release.

Habeas cases, however, appear to present an exception to the typical framework.  Under

similar circumstances—in other words, where the lawfulness of an alien's removal is at issue—

courts have determined that aliens may satisfy the "likelihood of success" prong by showing that

removal would be or was unlawful.[64]  In *Abrego Garcia v. Noem*, for example, the district

court's "likelihood of success" analysis focused on whether the Government had wrongfully

removed an alien (rather than whether the Government had wrongfully detained that alien).[65]

After determining that the alien was likely to succeed in arguing that the Government wrongfully

removed him, the district court ordered the Government to facilitate his return.[66]  The Supreme

Court upheld that order, concluding that the district court had "properly require[d] the

Government to 'facilitate' [the alien's] release from custody in El Salvador and to ensure that his

case [wa]s handled as it would have been had he not been improperly sent to El Salvador."[67]

---

[62] *See Bermudez v. SN Servicing Corp.*, No. 2:22-CV-01246-KJM-DB, 2022 WL 4280168, at *2 (E.D. Cal. Sept. 15, 2022) (emphasis added); *see also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (determining that "new assertions of mistreatment that are entirely different from the claim raised and the relief requested" in a complaint "cannot provide the basis for a preliminary injunction" (citing *Stewart v. INS,* 762 F.2d 193, 198–99 (2d Cir. 1985)).

[63] *See generally* Pet., ECF No. 1.

[64] *See, e.g.*, *Abrego Garcia v. Noem*, 777 F. Supp. 3d at 516–17.

[65] *See id.*

[66] *See id.* at 519.

[67] *See Noem v. Abrego Garcia*, 145 S. Ct. at 1018.

In light of *Abrego Garcia*, this Court concludes that the "likelihood of success" prong here hinges on whether she is likely to succeed in arguing that her removal would be unlawful under the circumstances—that is, without having been provided with an opportunity to seek withholding of removal. As the Court will now explain, she is likely to succeed on that argument.

Aliens are entitled to an opportunity to seek withholding under 8 U.S.C. § 1231(b)(3) and CAT[68]—both of which require the Government to make "individualized determinations."[69] For example, to obtain withholding of removal under § 1231(b)(3), an alien must "establish that it is more likely than not that *he or she* would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to that country."[70] Similarly, to obtain CAT protection, an alien must "establish that it is more likely than not that *he or she* would be tortured if removed to the proposed country of removal"[71] considering "all evidence relevant to the possibility of future torture."[72]

---

[68] *See, e.g.*, *Thanga v. Gonzales*, 162 F. App'x 295, 298 (5th Cir. 2006) ("An alien may apply for withholding of removal under [8 U.S.C. § 1231(b)(3)]."); *Zhu v. Gonzales*, 493 F.3d 588, 596 (5th Cir. 2007) (explaining that "withholding of removal is not discretionary"); *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002) (explaining that aliens are "entitled to a reasonably fair opportunity to apply for . . . Convention Against Torture protection." (citing *Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382 (10th Cir. 1981)).

*See also* 8 C.F.R. § 208.16 ("Withholding of removal under [8 U.S.C. § 1231(b)(3)] and withholding of removal under the Convention Against Torture.").

[69] *See Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) (characterizing whether to grant withholding of removal under 8 U.S.C. § 1231(b)(3) and CAT (among other things) as "individualized determinations").

[70] 8 C.F.R. § 208.16(b)(2) (emphasis added).

[71] *Id.* § 208.16(c)(2) (emphasis added).

[72] *Id.* § 208.16(c)(3) ("*[A]ll evidence* relevant to the possibility of future torture *shall be considered* . . . ." (emphases added)).

Respondents argue that the Government already received adequate assurances from Sierra Leone that aliens won't be persecuted or tortured.[73]  Respondents further argue that, under current DHS guidance, those assurances obviate the need to screen Petitioner for withholding of removal.[74]  Yet, the Government's categorical determination that "aliens removed . . . [to Sierra Leone] will not be subject to persecution or torture"[75] is a far cry from the "individualized determinations" that 8 U.S.C. § 1231(b)(3) and CAT demand.[76]  Indeed, there is absolutely no indication that the Government considered Petitioner's specific circumstances (as it was required to do) before it designated Sierra Leone as her country of removal.[77]  Agency guidance cannot "supplant the INA's removal procedures."[78]  The Government's attempts to do so here appear to be unlawful.[79]

Respondents nonetheless contend that the Court can't intervene here because the Government's decision to accept assurances from Sierra Leone isn't subject to judicial review.[80] In support, Respondents cite *Munaf v. Geren*.[81]  That case concerned two American citizens (the

---

[73] *See* Resp'ts' Resp. Mot. TRO at 8–9.

[74] *Id*. at 10–11.

[75] *See* Mull Dec., ECF No. 13-3, at 2.

[76] *See supra* notes 68–72 and accompanying text.

[77] *See generally* Resp'ts' Resp. Mot. TRO; Mull Dec.

[78] *See, e.g.*, *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, No. 25-5243, 2026 WL 1110616, at *19–20 (D.C. Cir. Apr. 24, 2026).

[79] *See id.* at *27 (determining that DHS guidance was unlawful where it "circumvent[ed] Congress's carefully crafted removal procedures and cast[ed] aside federal laws that afford individuals the opportunity to apply and be considered for . . . withholding of removal.").

[80] *See* Resp'ts' Resp. Mot. TRO at 10–11.

[81] *See id.* at 10 (citing *Munaf v. Geren*, 553 U.S. 674 (2008)).

"prisoners") who had allegedly "committed hostile or warlike acts in Iraq."[82]  After the prisoners were apprehended by an international coalition under the command of the United States military, the Iraqi government requested to take custody and prosecute the prisoners in Iraqi courts under Iraqi laws.[83]  The prisoners insisted that "their transfer to Iraqi custody" would be unlawful because it was "likely to result in [their] torture."[84]  The United States Government, however, determined that the Iraqi authorities and prisons "generally met internationally accepted standards for basic prisoner needs" and therefore planned to transfer the prisoners into Iraqi custody over their objections.[85]

Both prisoners filed lawsuits seeking to prevent their respective transfers, and their cases ultimately reached the Supreme Court.[86]  After observing that the United States Government had accepted Iraqi assurances that the prisoners wouldn't be tortured, the Supreme Court concluded that "[t]he Judiciary is not suited to second-guess" "the Executive's assessment of a foreign country's legal system and . . . ability to obtain foreign assurances it considers reliable."[87]  Those types of determinations, the *Munaf* Court explained, "would require federal courts to pass judgment on foreign justice systems"—which is an issue that the political branches are better-

---

[82] *See Munaf*, 553 U.S. at 679–80.

[83] *See id.* at 679–80, 705.

[84] *Id.* at 700.

[85] *Id.* at 701–02.

[86] *See generally id.*; *see also Omar v. Harvey*, 416 F. Supp. 2d 19 (D.D.C. 2006); *Mohammed v. Harvey*, 456 F. Supp. 2d 115 (D.D.C. 2006).

[87] *Munaf*, 553 U.S. at 702.

situated to consider.[88]   The *Munaf* Court therefore determined "in [that] context" that judicial intervention wasn't appropriate.[89]

While this Court acknowledges the deference owed to the Government's foreign policy decisions, this context is distinguishable from *Munaf*.   Unlike in *Munaf*, Petitioner doesn't ask the Court to second guess the Government's foreign policy assessments.[90]   The issue here isn't whether the Government was justified in accepting Sierra Leone's assurances that aliens removed there won't be persecuted or tortured.   Rather, the issue is whether the Government may remove aliens to ***any third country*** without allowing them to seek withholding of removal. The Government may well determine that Petitioner isn't entitled to withholding of removal from Sierra Leone even after following the procedures prescribed by regulation.   At that point, the Government would have discharged its obligations under § 1231(b)(3) and CAT, and *Munaf* would preclude the Court from second-guessing the Government's determination.[91]   But until that point, *Munaf* is no bar.[92]

For the above-stated reasons, the Court finds that Petitioner is likely to succeed in arguing that the Government may not lawfully remove her to Sierra Leone without first letting her apply for withholding of removal under § 1231(b)(3) and CAT.   The first *Winter* factor therefore tips in Petitioner's favor.

---

[88] *Id.*

[89] *See id.* at 700.

[90] *See generally* Mot. TRO; Mem. ISO Mot. TRO.

[91] *See Munaf*, 777 F. Supp. 3d.

[92] *But see* Order at 7–8, *Torrez Lopez v. U.S. Immigration and Customs Enforcement*, No. 5:26-CV-01298 (W.D. Tex. Apr. 23, 2026), ECF No. 13 (Pulliam, J.).

### 2.      Substantial Threat of Irreparable Harm

The Court next considers whether Petitioner has shown a substantial threat of irreparable harm.  "An injury is 'irreparable' only if it cannot be undone through monetary remedies."[93]

As explained above, Petitioner wishes to pursue withholding of removal from Sierra Leone.[94]  If her concerns that she will be "persecuted or tortured" in Sierra Leone are well-founded,[95] then Petitioner will be at physical risk if the Government carries out the removal.  For that reason, the threat of irreparable harm in this case "is clear and simple: persecution, torture, and death."[96]

Monetary remedies are plainly inadequate to "undo" these types of harm.[97]  The second *Winter* factor therefore also tips in Petitioner's favor.

### 3.      Balance of Hardships and Public Interest

Finally, the third and fourth factors "merge when the Government is the opposing party,"[98] as is true here.  Concerning the balance of equities, "courts 'must balance the

---

[93] *OCA Greater Hous. v. Texas*, No. 1:15-CV-679-RP, 2016 WL 4597636, at *4 (W.D. Tex. Sept. 2, 2016) (citing *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)).

[94] *See* Mem. ISO Mot. TRO at 2–3 (noting that Petitioner hasn't been given the opportunity to apply for withholding of removal from Sierra Leone, "where she fears persecution or torture").

[95] *See* Reply ISO Mot. TRO, ECF No. 14, at 2.

[96] *Mahdejian*, 2025 WL 2269796, at *4 (citing cases); *see also Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) ("Deportation to a country where one's life would be threatened obviously would result in irreparable injury.").

[97] *See, e.g.*, *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 759 F. Supp. 1339, 1352 (W.D. Wis. 1991) (concluding that "assaults, batteries[,] and harassment" "cannot be remedied by monetary damages").

[98] *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 643 (5th Cir. 2023) (applying the same "merging" rule in the preliminary injunction context).

competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"[99]  As to the public interest, the Court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."[100]  "Of course there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm."[101]  Conversely, "[t]here is always a public interest in prompt execution of removal orders."[102]

Here, Petitioner is in a particularly vulnerable position of being subject to removal to a country where (1) she alleges that she is likely to face substantial harm;[103] but (2) hasn't been afforded the opportunity to demonstrate as much.[104]  Moreover, while the Court acknowledges the "public interest in prompt execution of removal orders," that doesn't mean the Government can neglect the procedures promulgated under § 1231(b)(3) or CAT.  Indeed, the public interest in allowing Petitioner to seek withholding protection outweighs what little legitimate interest the Government has (if any) in sidestepping its humanitarian obligations.[105]

The equities and public interest factors therefore tip in Petitioner's favor as well.

*****

---

[99] *Winter*, 555 U.S. at 24.

[100] *Id.* (first quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982); and then citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)).

[101] *Nken*, 556 U.S. at 436.

[102] *Id.*

[103] *See supra* note 95 and accompanying text.

[104] *See generally* Mot. TRO.

[105] *See Sagastizado*, 802 F. Supp. 3d at 1016; *see also State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (stating that there is "generally no public interest in the perpetuation of unlawful agency action").

After carefully considering each *Winter* factor, the Court finds that injunctive relief is necessary here. The Court will therefore enjoin Respondents from removing Petitioner without first allowing her to seek withholding of removal in the manner prescribed by 8 C.F.R. §§ 208 and 1208.[106]

## IV.    Conclusion

For the reasons stated above, the Court **GRANTS** Petitioner's "Emergency Motion for Temporary Restraining Order" (ECF No. 11) **IN PART** to the extent it seeks an order enjoining Respondents from removing Petitioner without first allowing her to seek withholding of removal.

The Court thereby **ENJOINS** Respondents from removing Petitioner from the United States until:

    (1)    the Government provides Petitioner with the opportunity to seek withholding of removal in the manner prescribed by 8 C.F.R. §§ 208 and 1208; *or*

    (2)    the Court orders otherwise.

The Court thereby **DISSOLVES** its "Order Temporarily Restraining Respondents from Removing Petitioner and Setting Hearing" (ECF No. 16).[107]

The Court further **ORDERS** that the parties **SHALL INFORM** the Court **as soon as possible** of any material developments in Petitioner's efforts to seek withholding of removal (if she chooses to initiate those processes), including:

    (1)    whether the Government has allowed Petitioner to initiate the processes by which she may seek withholding of removal under 8 U.S.C. § 1231(b)(3) and CAT; and if so,

---

[106] *See infra* Section IV.

[107] *See Granny Goose*, 415 U.S. at 443 (explaining that once the court rules on a motion for preliminary injunction, then the temporary restraining order has served its purpose and should be dissolved).

(2)      the status of those processes.

The Court further **ORDERS** that if the parties haven't become aware of any such material developments by **Friday, June 12, 2026**, the parties **SHALL** (on that same date) **INFORM** the Court of the same.

The Court further **ORDERS** Respondents to transmit this Order to all relevant officers, agents, and employees under their control and with responsibility in this matter.

Finally, the Clerk **SHALL** serve copies of this Order on all named Respondents.

**So ORDERED and SIGNED this 22nd day of May 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**